IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

PETROLIA MOSS                                                                    PLAINTIFF

v.                                      Case No. 4:14-cv-4157

TEXARKANA ARKANSAS SCHOOL
DISTRICT; and THERESA COWLING,
BECKY KESLER, and ROBIN HICKERSON,
in their official and individual capacities                              DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment.  (ECF No. 34).  Plaintiff

filed a response.  (ECF No. 47).  Defendants filed a reply.  (ECF No. 56).  The Court finds the

matter ripe for consideration.

## I.  BACKGROUND

This case is an employment-discrimination action brought under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 1983, and the Arkansas Civil Rights Act ("ACRA").  Plaintiff is

an African-American woman who previously worked for Separate Defendant Texarkana

Arkansas School District ("TASD") as a teacher.  Plaintiff alleges that Defendants engaged in

discriminatory practices against her on the basis of race by suspending her without pay, imposing

burdensome working conditions, engaging in harassment, and making her working conditions

intolerable.[1]  (ECF No. 1).

---

[1] On March 31, 2016, Plaintiff moved the Court for leave to file an amended complaint to add additional claims
under Title VII, the Civil Rights Act of 1866, 42 U.S.C. § 1981, 42 U.S.C. § 1985, the Family and Medical Leave
Act, the Equal Pay Act, the Due Process and Equal Protection clauses of the Fourteenth Amendment, and state-law
claims for breach of contract, age discrimination under ACRA, defamation, wrongful discharge, and the tort of
outrage.  (ECF No. 28).  The Court denied the motion on the basis that the request was unduly delayed and would
result in unfair prejudice.  (ECF No. 31).  However, Plaintiff's brief opposing the present summary judgment motion

On October 16, 2013, Plaintiff stated to her seventh grade science class that soy products degenerate the male hormone and that soy milk would "make[] the male want to be female." (ECF No. 54-2). The students began discussing amongst themselves whether boys who used soy products would grow up to be homosexual. On the same day, a parent of one of Plaintiff's students called Separate Defendant Theresa Cowling ("Cowling"), Plaintiff's junior-high principal, complaining that Plaintiff's statements upset the student. Cowling shared the parent's complaint with Separate Defendant Robin Hickerson ("Hickerson"), TASD's assistant superintendent for secondary education and human resources.

On October 17, 2013, Plaintiff's students were asked to provide written statements regarding Plaintiff's October 16, 2016 science class. One student informed Cowling that she had recorded Plaintiff's statements with her cell phone. The student gave the recording to TASD. On October 18, 2013, Plaintiff met with Cowling, Hickerson, and Separate Defendant Becky Kesler ("Kesler"), TASD's superintendent. Plaintiff was informed that she would be suspended with pay for three days for allegedly making inappropriate comments to her class. Cowling and Hickerson conducted an investigation into Plaintiff's actions.

On November 4, 2013, Plaintiff received written notice that as a result of the investigation, she would be suspended without pay for five days for making inappropriate comments to her class. Plaintiff was also informed in writing that she would be required to participate in a six-week improvement plan used by TASD to correct teachers' deficiencies. The notice stated that the plan was necessary for Plaintiff due to her: (1) failure to maintain a professional relationship with students in connection with the in-class soy discussion; (2) failure to follow the seventh grade science curriculum map; (3) failure to maintain a professional

---

nonetheless makes reference to the additional claims she previously sought to add. These additional claims were not properly asserted and thus are not at issue in this case. Therefore, the Court will not consider them for purposes of this Memorandum Opinion.

relationship with students regarding a September 23, 2013 incident where Plaintiff made physical contact with a student's rear for walking behind Plaintiff's desk; (4) failure to maintain an up-to-date teacher webpage; and (5) reported wrongful assignment of tardies to students.

On February 18, 2014, Plaintiff filed a charge of racial discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"). On March 7, 2014, Plaintiff submitted a written letter of resignation to TASD, effective June 30, 2014. On August 10, 2014, the EEOC issued a Notice of Right to Sue to Plaintiff. On November 26, 2014, Plaintiff filed this lawsuit alleging employment discrimination. Defendants assert that they are entitled to summary judgment on all of Plaintiff's claims.[2]

## II. STANDARD

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

---

[2] After Defendants filed the instant motion, the parties filed a series of motions to strike various documents related to the summary judgment motion. The procedural history of these motions is convoluted, and the Court will not fully recount it here. However, particularly relevant to this Memorandum Opinion is the fact that the Court struck Plaintiff's affidavit, which was filed as an exhibit to her response to the summary judgment motion. (ECF No. 68). In the same order, the Court also held that certain factual assertions in Plaintiff's statement of facts would not be considered in the Court's summary judgment determination because they lacked proper evidentiary support, stated opinion or speculation as fact, or were otherwise inappropriately worded.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party.  *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).  Accordingly, the Court applies the same summary judgment standard to discrimination cases as it does to all others.

## III.  DISCUSSION

Defendants assert that they are entitled to summary judgment on Plaintiff's Title VII, ACRA, and §1983 claims, as well as on the issue of whether compensatory damages related to emotional distress are available in this case.[3]  The Court will now address each in turn.

### A. Title VII Race-Discrimination Claims

Defendants assert that summary judgment is appropriate on Plaintiff's Title VII race-

---

[3] Plaintiff brings several claims against Cowling, Hickerson, and Kesler in their official capacities.  The Court construes these official-capacity claims as claims against TASD.  *See Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 609 n.1 (8th Cir. 1999) ("Suits against school officials in their official capacity are treated as suits against the school district itself.").

discrimination claims against TASD, and against Cowling, Hickerson, and Kesler in both their individual and official capacities.  The Court will first address the individual-capacity claims, and then will address the remaining race-discrimination claims.

### 1. Individual Capacity Title VII Race-Discrimination Claims

Defendants argue that summary judgment is appropriate on Plaintiff's individual-capacity Title VII claims.  The Court agrees.

The Eighth Circuit has instructed that Title VII claims are applicable to employers, but not to individuals.  *See Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008) (noting that Title VII provides for actions against employers but not supervisors); *Powell v. Yellow Book USA*, 445 F.3d 1074, 1079 (8th Cir. 2006) ("Title VII addresses the conduct of employers only and does not impose liability on coworkers.").  Plaintiff has asserted Title VII claims against Cowling, Hickerson, and Kesler in their individual capacities.  The Court finds that Plaintiff's individual-capacity Title VII race-discrimination claims must fail because there is no individual liability under Title VII.

Accordingly, the Court finds that Defendants' summary judgment motion should be granted on Plaintiff's Title VII race-discrimination claims against Cowling, Hickerson, and Kesler in their individual capacities.

### 2. Remaining Title VII Race-Discrimination Claims

Defendants argue that summary judgment is appropriate on Plaintiff's Title VII race-discrimination claims against TASD.  The Court agrees.

Plaintiff has not presented any direct evidence of race discrimination, so the Court will analyze her claims under the *McDonnell Douglas* burden-shifting framework. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012).  Under this familiar framework, Plaintiff must first establish a *prima facie* case of discrimination.  *Id.*  If Plaintiff successfully establishes

a *prima facie* case, Defendants may rebut the *prima facie* case by articulating a non-discriminatory reason for their actions. *Id.* If Defendants offer a non-discriminatory reason for their actions, the burden then shifts back to Plaintiff to show that Defendants' proffered reason was merely pretext for discrimination. *Id.*

### a. *Prima Facie* Case

First, Plaintiff must establish a *prima facie* case of race discrimination. To do so, she must demonstrate that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Id.* "Circumstances giving rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner." *Id.* at 853-54. A failure to establish even one element of a *prima facie* case defeats a Title VII discrimination claim. *Tatum v. City of Berkele*y, 408 F.3d 543, 550-51 (8th Cir. 2005). In this case, Defendants argue that Plaintiff cannot satisfy the third and fourth *prima facie* elements—that she suffered an adverse employment action and that a similarly situated employee outside her protected class was treated differently.

Defendants argue that Plaintiff cannot satisfy the third *prima facie* element with respect to her placement on an improvement plan because, by its definition, an improvement plan is not punitive and does not constitute an adverse employment action. Plaintiff offers no argument in response as to whether the improvement plan satisfies this *prima facie* element.

An adverse employment action must have a materially adverse impact on the terms or conditions of a plaintiff's employment. *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001). There must be a tangible change in working conditions that produces a material employment disadvantage. *Cooney v. Union Pacific Railroad, Co.*, 258 F.3d 731, 734 (8th Cir.

6

2001). For example, termination, reduction in pay or benefits, and changes that affect an employee's future career prospects generally meet this standard. *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). However, minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not suffice. *Id.* (citing *Ledergerber v. Strangler*, 122 F.3d 1142, 1144 (8th Cir. 1997)).

The record shows—and Plaintiff concedes in her deposition testimony—that teacher improvement plans are mandated by the state of Arkansas and are used by schools to identify and correct deficiencies in a teacher's teaching method. Plaintiff's improvement plan required her to complete certain assignments over a six-week period.[4] Plaintiff does not argue or offer evidence that the improvement plan resulted in her termination, reduction in pay or benefits, or any changes which affected her future career prospects. Instead, the Court finds that the improvement plan resulted in minor changes to her work responsibilities, as it required her to complete certain assignments in addition to her regular work. Thus, the improvement plan alone cannot amount to an adverse employment action. *See Givens v. Cingular Wireless*, 396 F.3d 998, 998 (8th Cir. 2005) (holding that placing an employee on a performance improvement plan, without more, does not constitute an adverse employment action). Therefore, the Court finds that Plaintiff cannot satisfy the third *prima facie* element with respect to her placement on an improvement plan.

Defendants also argue that Plaintiff cannot satisfy the fourth *prima facie* element with respect to her suspension because she cannot point to any similarly situated employees who received more favorable treatment. Plaintiff points the Court to five white TASD employees who she argues were similarly situated to her and were not suspended for their actions.

---

[4] Specifically, the improvement plan required Plaintiff to attend one teachers' curriculum meeting per week, update her teacher's webpage twice a month, read one or two selected chapters on teaching methods per week and prepare a one-page summary for each, and to read five pages from TASD's teacher handbook.

"The test for whether employees are similarly situated . . . is rigorous." *Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001).  Plaintiff bears the burden of showing that employees used for comparison are similarly situated in all relevant respects.  *Ghane v. West*, 148 F.3d 979, 982 (8th Cir. 1998).  "The individuals used for comparison must have dealt with the same supervisor, have been subjected to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1044 (8th Cir. 2007).  In addition, the individuals used for comparison must have held the same position.  *See Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1082 (8th Cir. 2010).

The first employee Plaintiff points to is a white teacher named Leshe.  Plaintiff states that Leshe once deviated from his class's planned sociology curriculum by answering a student's question about herpes.  The record shows that TASD required Leshe to apologize to the student's parents for answering the question, but Leshe was not suspended.  Plaintiff argues that she and Leshe are similarly situated because they both answered a student's off-topic question.  Defendants argue that Plaintiff and Leshe are not similarly situated because Plaintiff had recently been disciplined multiple times prior to her suspension and placement on an improvement plan, while nothing in the record shows that Leshe had any prior, recent disciplinary history.  The Court agrees with Defendants that Plaintiff and Leshe are not similarly situated.  Plaintiff's deposition testimony provided that, to her knowledge, Leshe never dealt with Cowling, Hickerson, or Kesler in connection with the punishment he received for his in-class incident, and he instead dealt with TASD Assistant Principal Regina Houff.  No other evidence in the record shows that Leshe interacted with Cowling, Hickerson, or Kesler.  Therefore, Plaintiff and Leshe are not similarly situated because Plaintiff has not shown that they dealt with the same

supervisor.[5]  *See Morgan*, 486 F.3d at 1044 (requiring similarly situated individuals to have dealt with the same supervisor).  Moreover, the Court finds that Plaintiff and Leshe are distinguished by the fact that Plaintiff previously received several reprimands from TASD for other incidents in the same semester while no evidence indicates that Leshe had a similar disciplinary history.  *See Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) ("Three other individuals are not similarly situated because [the plaintiff] did not establish that the circumstances of their misconduct were comparable in severity or frequency to [her] infractions."); *Parks v. Mo. Dep't of Soc. Servs.*, No. 05-01150-cv-W-JTM, 2006 WL 3331310, at *3 (W.D. Mo. Nov. 15, 2006) ("In this case, [the plaintiff's] multiple and progressive disciplines makes its [sic] very unlikely that any employee can be viewed as similarly situated to [the plaintiff].").  Accordingly, the Court finds that Plaintiff failed to meet her burden of showing that Leshe was similarly situated to her in all relevant respects.

Plaintiff also points the Court to a white assistant principal named Jones, who broke up a fight between two female African-American students and, when one girl continued to try to fight, he took her to the ground and held her head against the floor.  The record shows that TASD hired an independent law firm to conduct an investigation, which found no wrongdoing on Jones's part.  The Arkansas Department of Human Services and the Texarkana Police Department also conducted investigations of the incident and found no evidence of wrongdoing by Jones.  TASD did not suspend Jones as a result of the incident.  Defendants argue that Plaintiff and Jones are not similarly situated, and the Court agrees.  The Court finds that Plaintiff and Jones held different positions within TASD:  science teacher and assistant principal, respectively.  The Court finds that Plaintiff and Jones are not similarly situated for this reason.  *See Fercello*, 612

---

[5] Plaintiff testified that Houff was present in the room when Plaintiff would turn in assignments related to her improvement plan, but that Cowling oversaw Plaintiff's improvement plan and was in charge of ensuring that she completed the plan.

F.3d at 1082 (holding that employees who had different positions were not similarly situated). Moreover, the conduct of Plaintiff and Jones—making inappropriate comments to a class and engaging in a physical altercation with a student—is too dissimilar to warrant a finding that the two were similarly situated in that regard. *See Morgan*, 486 F.3d at 1044 (requiring similarly situated individuals to have engaged in the same conduct without any mitigating or distinguishing circumstances). Accordingly, the Court finds that Plaintiff has failed to meet her burden of showing that Jones was similarly situated to her in all relevant respects.

Plaintiff also points the Court to a white security officer named Black who was terminated by TASD for directing a racial slur at a co-worker. Defendants argue that Plaintiff and Black are not similarly situated. The Court agrees. The Court finds that Plaintiff and Black held different positions within TASD: science teacher and head of school security, respectively. The Court finds that Plaintiff and Black are not similarly situated for this reason. *See Fercello*, 612 F.3d at 1082 (holding that employees who had different positions were not similarly situated). Moreover, the conduct of Plaintiff and Black—making inappropriate comments to a class and directing a racial slur at a co-worker—is too dissimilar to warrant a finding that the two were similarly situated in that regard. *See Morgan*, 486 F.3d at 1044 (requiring similarly situated individuals to have engaged in the same conduct without any mitigating or distinguishing circumstances). Thus, the Court finds that Plaintiff and Black are not similarly situated because they did not hold the same position and did not engage in the same conduct without any mitigating or distinguishing circumstances. Accordingly, the Court finds that Plaintiff has failed to meet her burden of showing that Black was similarly situated to her in all relevant respects.

Plaintiff also points the Court to two white teachers who resigned from TASD. One teacher, named Altman, resigned amidst allegations that she engaged in sexual activity with a student, while the other, named Knight, resigned amidst allegations that he made inappropriate

comments to his class.[6]  Plaintiff argues that she is similarly situated to both, and that neither Altman nor Knight was punished for their actions.  Defendants argue that Plaintiff is not similarly situated to Altman and Knight because Altman and Knight both resigned before TASD had an opportunity to administer punishment to them.[7]  The Court agrees that neither teacher is similarly situated to Plaintiff.  The Court finds that Plaintiff and Altman are not similarly situated because Altman, who was accused of having sex with a student, did not engage in a similar conduct to Plaintiff, who was suspended for making inappropriate comments to her class.  *See Morgan*, 486 F.3d at 1044 (requiring similarly situated individuals to have engaged in the same conduct without any mitigating or distinguishing circumstances).  The Court does find that Plaintiff and Knight are similarly situated because they were teachers for TASD who allegedly made inappropriate, off-topic comments to their class.  However, evidence in the record indicates that Plaintiff and Knight were both immediately suspended pending an investigation after the school received allegations of them making inappropriate comments to their class.[8]  Therefore, Knight did not receive preferential treatment compared to Plaintiff for their similar conduct.  As such, the Court finds that Plaintiffs' use of Knight is insufficient to draw an inference of discrimination.

For the reasons discussed above, the Court finds that Plaintiff is unable to point to a similarly situated employee who was not a member of her protected class and who received preferential treatment.  She has offered no other evidence, and therefore, cannot satisfy the fourth

---

[6] Plaintiff's statement of facts asserts that Knight engaged in sexual activity with a student while employed as a teacher at TASD, and that Kesler was aware of this fact but took no action until it became publicly known.  Plaintiff offers no evidence to support this assertion.  The record shows only that Knight was suspended for making inappropriate comments.  (ECF No. 54-4).

[7] There is evidence in the record that Altman and Knight were both suspended pending an investigation before they both resigned.  (ECF No. 38-4).

[8] Plaintiff argues that Knight was not disciplined by TASD prior to his resignation, but offers no evidence to support this claim other than unsupported assertions in her brief.

*prima facie* element of showing that the circumstances gave rise to the inference of unlawful discrimination.  Accordingly, the Court finds that Plaintiff cannot make a *prima facie* case for race discrimination with respect to her suspension.  Therefore, Plaintiff's Title VII race-discrimination claims against TASD must fail.  *Tatum*, 408 F.3d at 550-51 (stating that failure to establish any *prima facie* element defeats a Title VII discrimination claim).

### b. Legitimate, Non-Discriminatory Reason and Pretext

Assuming *arguendo* that Plaintiff can make a *prima facie* case for race discrimination, the Court must then determine whether Defendants have offered a legitimate, non-discriminatory reason for their action.  If they have done so, the burden shifts back to Plaintiff to show that Defendants' offered reason was merely pretext for discrimination.

Defendants' burden of articulating a legitimate, non-discriminatory reason for their actions is a light one, as it is "one of production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  The Eighth Circuit has held that failure to follow an established company policy is a legitimate, non-discriminatory ground for action.  *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (citing *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003)).

Defendants state that Plaintiff was suspended and placed on an improvement plan for making inappropriate comments to her seventh grade class, specifically that soy products degenerate the male hormone and that soy milk would "make[] the male want to be female." (ECF No. 54-2).  The record indicates that some of Plaintiff's students took this to mean that boys who ingested soy products would grow up to be homosexual.  Defendants argue that TASD gave Plaintiff an opportunity to review the audio recording and transcript of her comments to the class, and that she did not dispute the accuracy of the recording and transcript.  Defendants' letter

to Plaintiff informing her of her suspension and placement on an improvement plan indicated that her in-class soy comments constituted a failure to maintain a professional relationship with students, which is a violation of the Arkansas Code of Ethics for Educators.  For this reason, the Court finds that Defendants have articulated a legitimate, non-discriminatory reason for suspending and placing Plaintiff on an improvement plan.

Because Defendants have articulated a legitimate, non-discriminatory reason for their actions, the Court looks to whether Plaintiff can establish by a preponderance of the evidence that Defendants' offered reason was mere pretext for discrimination.  *Twymon*, 462 F.3d at 935.  To do so, she must "both discredit [Defendants'] assertion . . . and show that the real reason . . . was her race."  *Id.*

Plaintiff argues that Defendants have not pointed out what specific rule in the TASD Licensed Personnel Policy Handbook and the Arkansas Code of Ethics for Educators was violated when Plaintiff made her in-class soy comments.  Plaintiff argues further that no rule prohibited her in-class soy comments, and thus Defendants' actions toward her were merely pretext for discrimination.  Plaintiff again points the Court to the five white teachers—Leshe, Jones, Black, Altman, and Knight—to show that similarly situated employees who were not part of her protected class received more favorable treatment.

The Court disagrees with Plaintiff.  The Court notes that Plaintiff does not appear to dispute that she made the soy comments.  In fact, she testified that she does not dispute the accuracy of the audio recording and transcript of her in-class comments.  Evidence in the record shows that the Arkansas Code of Ethics for Educators requires teachers to "maintain a professional relationship with each student."  (ECF No. 49-5).  After her in-class soy comments, TASD sent Plaintiff a letter informing her of her suspension, as well as a letter informing her of her placement on an improvement program.  In both of these letters, TASD informed Plaintiff

that her in-class soy comments constituted failure to maintain a professional relationship with students, and attached a copy of the Arkansas Code of Ethics for Educators.  (ECF No. 49-8).  Therefore, the Court is not persuaded by Plaintiff's argument that no rule prohibited her conduct.  With respect to Plaintiff's attempt to establish disparate treatment through similarly situated employees, the Court has determined in the previous section that none of the five employees offered by Plaintiff are similarly situated employees who were not part of her protected class and who received preferential treatment.  For the reasons discussed above, the Court finds that Plaintiff has failed to establish disparate treatment through similarly situated employees.

The Court finds that Plaintiff has not met her burden to show by a preponderance of the evidence that Defendants' articulated reason was mere pretext for discrimination.  "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) (internal quotation marks omitted).  The Court's role here is only to determine whether a genuine issue exists for trial on the question of whether Defendants took action against Plaintiff because of her race.  The Court finds that Plaintiff has not made such a showing.  Plaintiff's Title VII race-discrimination claims must fail for this reason.

Accordingly, the Court finds that Defendants' summary judgment motion should be granted on Plaintiff's Title VII race-discrimination claims against TASD.

**B. Title VII Harassment Claims**

Defendants argue that summary judgment is appropriate on Plaintiff's Title VII harassment claims.  The Court agrees.

Plaintiff asserts that her placement on an improvement plan after the in-class soy discussion constituted actionable harassment under Title VII.  "The question of whether an environment is sufficiently hostile to be actionable is a legal question, and, like any legal

14

question, is a matter for the court to decide.  In other words, a showing of some minimal level of harassment is necessary before a case is submissible to a jury." *Jackson v. Flint Ink N. Am. Corp.*, 382 F.3d 869, 869 (8th Cir. 2004).

Title VII provides, in relevant part, that an employer[9] may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race."   42 U.S.C. § 2000e-2(a)(1).   A successful hostile-work-environment harassment claim under Title VII must show that:   (1) the plaintiff belongs to a protected group; (2) the plaintiff experienced unwelcome harassment; (3) there was a causal link between the harassment and the plaintiff's membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment.  *Beard v. Flying J, Inc.*, 266 F.3d 792, 797 (8th Cir. 2001).

As discussed above, Plaintiff's individual-capacity claims against Cowling, Hickerson, and Kesler are unavailable under Title VII.  *See Van Horn*, 526 F.3d at 1147; *Powell*, 445 F.3d at 1079.  These individual-capacity claims must fail because there is no individual liability under Title VII.  Accordingly, the Court finds that Defendant's summary judgment motion should be granted on Plaintiff's individual-capacity Title VII harassment claims.  The remainder of the Court's discussion in this section will focus on Plaintiff's Title VII harassment claims against TASD.

Defendants argue, without discussing any specific *prima facie* elements, that Plaintiff cannot make a *prima facie* showing for harassment.  Plaintiff argues, also without discussing any of the *prima facie* elements, that the improvement plan required her to "do extra and burdensome tasks such as excessive readings and book reports, in addition to her regular teaching duties . . .

---

[9] Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."  42 U.S.C. § 2000e(b).

for 6 weeks . . . making it difficult to impossible for Plaintiff to accomplish the assignment and her regular job."[10] (ECF No. 50).  In order for the Court to determine whether Plaintiff can make a *prima facie* case for Title VII harassment, the Court must address each of the four elements.

### 1. Member of a Protected Group

The first element requires Plaintiff to show that she is a member of a protected group. The parties do not appear to dispute that Plaintiff is a member of a protected group and the Court finds that Plaintiff is an African American.  Therefore, the Court finds that Plaintiff satisfies this element.

### 2. Unwelcome Harassment

The second element requires Plaintiff to show that she experienced unwelcome harassment.

The conduct at issue must be "unwelcome" in that Plaintiff regarded it as undesirable or offensive and neither solicited nor invited it.  *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 966 (8th Cir. 1999).  The proper inquiry is whether Plaintiff indicated by her conduct that the alleged harassment was unwelcome.  *Id.*

The record shows that after receiving written notice of her placement on the improvement plan, Plaintiff responded to TASD in writing, expressing her belief that each of the improvement plan's requirements were based on insufficient evidence or were otherwise inappropriate. Moreover, the record shows that Plaintiff filed grievances with TASD relating to her suspension and her placement on the improvement plan.  The Court finds that this is sufficient to show that Plaintiff considered the improvement plan to be undesirable or offensive and that she neither

---

[10] Plaintiff's brief also argues other alleged instances of harassment, but fails to properly substantiate these instances.  For each of these allegations, Plaintiff cites to her now-stricken affidavit, to evidence in the record that cannot be considered for summary judgment purposes due to being inadmissible hearsay, *see Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1112 (8th Cir. 2005) ("[D]eposition testimony must also be admissible to be considered in ruling on a motion for summary judgment."), or to evidence in the record that does not actually support the allegations.  Therefore, the Court will not consider these other alleged instances of harassment in its analysis.

solicited nor invited it.  Therefore, the Court finds that Plaintiff satisfies this element.

### 3. Causal Link Between Harassment and Race

The third element requires Plaintiff to show that she suffered harassment based on her race.

As a threshold matter, "for conduct to be considered in a race-based hostile work environment claim, the conduct must 'have a racial character.'" *Singletary v. Mo. Dept. of Corrections*, 423 F.3d 886, 893 (8th Cir. 2005) (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004)).  Without evidence that race was linked to harassing conduct, any connection between the conduct and race is purely speculative.  *See Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 519 (8th Cir. 2010) (finding that the plaintiff offered "little more than speculation and conjecture" that supervisor's "nitpicking and ridicule" had anything to do with race).

Plaintiff does not directly argue that she suffered harassment because of her race.  She does, however, state that Leshe was reprimanded, but not placed on an improvement plan, after he deviated from his class's planned curriculum by answering a student's question about herpes.  In doing so, Plaintiff appears to make a disparate-treatment argument to show that, following the in-class soy discussion, TASD placed her on an improvement plan because of her race.

The Court finds that this is insufficient to show that Plaintiff was placed on an improvement plan because of her race.  As discussed above, the Court has determined that Plaintiff and Leshe are not similarly situated in all aspects.  Moreover, Plaintiff testified that she knew of white teachers whom TASD placed on an improvement plan, and even terminated, for making inappropriate comments to their class.  Thus, Plaintiff's disparate-treatment argument is undermined by her own testimony.  Plaintiff offers no other argument of a nexus between harassment and her race.  Therefore, the Court finds that Plaintiff cannot satisfy this element.

### 4. Affected a Term, Condition, or Privilege of Employment

The fourth element requires Plaintiff to show that harassment affected a term, condition, or privilege of her employment.

Title VII does not prohibit all verbal or physical harassment and "is not a general civility code for the American Workplace." *Nitsche*, 446 F.3d at 846. "Harassment is actionable if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 888 (8th Cir. 1998) (internal quotation marks omitted). To clear the high threshold of actionable harm, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also Scusa*, 181 F.3d at 967 (stating that actionable harassment must be "so intimidating, offensive, or hostile that it poisoned the work environment") (internal quotation marks omitted). "Simple teasing, offhand comments, and isolated incidents generally cannot amount to severe or pervasive harassment." *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999). These demanding standards are designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted). Although isolated incidents generally do not constitute severe or pervasive harassment, extremely serious isolated incidents can amount to actionable harm. *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003) (citing *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 454-57 (8th Cir. 2001)).

The harassing conduct must be enough to create a hostile environment from both the objective standpoint of a reasonable viewer and from the plaintiff's subjective standpoint. *Phillips*, 156 F.3d at 888. In determining whether conduct objectively creates a hostile environment, courts examine the totality of the circumstances, including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

In this case, Plaintiff argues that TASD's improvement plan required her "to do extra and burdensome tasks such as excessive readings and book reports, in addition to her regular teaching assignments." (ECF No. 50). This does not satisfy the fourth *prima facie* element's requirement that Plaintiff show severe and pervasive hostile conduct from both a subjective and objective viewpoint. The record shows that the six-week improvement plan required Plaintiff to attend one teachers' curriculum meeting per week, update her teacher's webpage twice a month, read one or two selected chapters on teaching methods per week and prepare a one-page summary for each, and to read five pages from the TASD's teacher handbook. The Court is not convinced that the improvement plan, considered either individually or along with Plaintiff's other unsubstantiated allegations of harassment, constituted severe and pervasive harassment that unreasonably interfered with Plaintiff's work performance. Courts have rejected racial-harassment claims as insufficiently frequent or severe based on facts more egregious than those in this case. *See, e.g.*, *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004) (finding racial remarks made directly to the plaintiff, once a month for two years, were insufficient to render the workplace objectively hostile); *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 844 (8th Cir. 2002) (holding that two instances in which the plaintiff overheard a racial epithet directed at someone else and three instances in which the plaintiff received second-hand information that a racial epithet was directed at him were insufficient to show an objectively hostile work environment). Therefore, the Court finds that Plaintiff cannot satisfy this element.

### 5. Conclusion

As discussed above, the Court finds that Plaintiff cannot show that she was subjected to unwelcome race-based harassment that affected a term or condition of her employment. Accordingly, the Court finds that Defendants' summary judgment motion should be granted on Plaintiff's Title VII harassment claims.

### C. ACRA Claims

Defendants argue that summary judgment is appropriate on Plaintiff's ACRA race-discrimination claims against TASD, and against Cowling, Hickerson, and Kesler in both their individual and official capacities. The Court agrees.

Title VII and ACRA utilize the same analytical framework for race-discrimination claims. S*ee Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 902 (8th Cir. 2015). Based on this, and for the reasons discussed above, the Court finds that Plaintiff is unable to make a *prima facie* showing for race discrimination under ACRA. Accordingly, the Court finds that Defendants' summary judgment motion should be granted on Plaintiff's ACRA claims against TASD. The Court finds further that summary judgment should also be granted on Plaintiff's individual-capacity ACRA race-discrimination claims because, like Title VII, ACRA does not attach liability to individuals. *See Richardson v. City of Pine Bluff, Ark.*, No. 5:05-cv-0179 SWW, 2006 WL 3388341, at *1 (E.D. Ark. Nov. 21, 2006).

Similarly, Title VII and ACRA use the same analytical framework for harassment claims. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000). Based on this, and for the reasons discussed above, the Court finds that Plaintiff is unable to make a *prima facie* showing for harassment under ACRA. Thus, the Court finds that Defendants' summary judgment motion should be granted on Plaintiff's ACRA harassment claims against TASD. The Court finds further that summary judgment should also be granted on Plaintiff's individual-

capacity ACRA harassment claims because there is no individual liability under ACRA. *See Richardson*, No. 5:05-cv-0179 SWW, 2006 WL 3388341, at *1.

Accordingly, the Court finds that Defendants' summary judgment motion should be granted on Plaintiff's ACRA claims of race discrimination and harassment.

### D. § 1983 Claims

Defendants argue that summary judgment is appropriate on Plaintiff's § 1983 claims.

Claims of race-based employment discrimination filed under § 1983 are analyzed under the same framework as Title VII claims. *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003) (applying *McDonnell Douglas* to § 1983 claim). Title VII and § 1983 harassment claims are likewise analyzed under the same framework. *Wright v. Rolette Cty.*, 417 F.3d 879, 884 (8th Cir. 2005). Based on this, and in light of the Court's above rulings with respect to Plaintiff's Title VII race-discrimination and harassment claims, her § 1983 claims against Defendants must also fail as a matter of law. *See Champion v. Hudson Mem'l Nursing Home*, No. 05-cv-1008 HFB, 2007 WL 177858, at *4 (W.D. Ark. Jan. 23, 2007) (granting summary judgment on claims brought under Title VII and § 1983).

Accordingly, the Court finds that Defendants' summary judgment motion should be granted on Plaintiff's § 1983 claims.

### E. Constructive Termination

Plaintiff alleges that she was constructively terminated by Defendants as a result of their conduct toward her. Defendants argue that Plaintiff has not brought a constructive-termination claim in this action because she did not plead such a claim in her complaint and did not ever amend her complaint to include a constructive-termination claim.

The Court finds that Plaintiff failed to assert a Title VII constructive-termination claim because she neither set out a cause of action in her complaint nor otherwise included any

language putting Defendants on notice that she had such a claim.  *See* Fed. R. Civ. P. 8(a) (stating that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").  Plaintiff's complaint alleges that Defendants discriminated against her on the basis of race by suspending her without pay, imposing burdensome working conditions on her, harassing her, and by making working conditions intolerable.  Plaintiff's complaint does not use the words "constructive termination," nor does it include language putting Defendants on notice of a constructive-termination claim.[11]  Plaintiff's filed EEOC charge likewise makes no allegations of or statements related to constructive termination.  (ECF No. 1).  Moreover, Plaintiff later filed a motion for leave to amend her complaint, stating that she "now alleges that the cessation of work for this Defendant TASD was the direct result of her inability to endure the continuous discrimination. . . .  That constructive discharge was motivated by race."[12]  (ECF No. 28).  Based on the absence of any language asserting or indicating a constructive-termination claim in Plaintiff's complaint and EEOC charge, as well as the language in Plaintiff's motion for leave to amend, the Court finds that Plaintiff's complaint did not set out a claim for constructive termination.  Accordingly, the Court finds that it need not determine whether summary judgment is appropriate, because there is no constructive-termination claim in this action.

### F. Compensatory Damages

Defendants argue that summary judgment is appropriate on the issue of whether

---

[11]  The Court recognizes that the language "intolerable working conditions" is a component of a constructive-termination claim.  *See Sanders v. Lee Cty. Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012) (stating that a successful constructive-termination claim must show that the employer deliberately created objectively intolerable working conditions with the intent of causing the employee to quit).  However, the Court finds that merely reciting a single *prima facie* element of the claim is insufficient to satisfy the Rule 8 requirement of stating a claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that "a formulaic recitation of the elements of a cause of action" will not suffice to properly state a claim).

[12]  The Court denied Plaintiff's motion for leave to amend her complaint because the request was unduly delayed and would result in unfair prejudice.  (ECF No. 31).

compensatory damages related to emotional distress are available in this case.  As discussed above, the Court has found that summary judgment should be granted on all of Plaintiff's claims. Therefore, the Court finds that it is unnecessary to determine whether compensatory damages related to emotional distress are available in this case.

## IV.  CONCLUSION

For the reasons discussed above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 34) should be and hereby is **GRANTED**.  Plaintiff's case is hereby **DISMISSED WITH PREJUDICE**.  A separate Judgment consistent with this Opinion will be entered.

**IT IS SO ORDERED**, this 1st day of March, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge